**FILED**

**08/19/2022 10:15 am**

**Fifth Court of Appeals
Claudia McCoy
Clerk Pro Tem**

ACCEPTED
05-22-00168-cr
FIFTH COURT OF APPEALS
DALLAS, TEXAS
8/17/2022 6:53 AM
CLAUDIA MCCOY
CLERK PRO TEMPORE

RECEIVED IN
5th COURT OF APPEALS
DALLAS, TEXAS
8/17/2022 6:53:36 AM

Claudia McCoy
Clerk Pro Tem

IN THE

COURT OF APPEALS

FOR THE FIFTH DISTRICT OF TEXAS

AT DALLAS

---

LEE ROY CHANEY
APPELLANT

V.

THE STATE OF TEXAS
APPELLEE

---

CAUSE NUMBER: 05-22-00168-CR

---

ON APPEAL FROM CAUSE NUMBER: F20-39327
203RD DISTRICT COURT
OF DALLAS COUNTY, TEXAS

---

APPELLANT'S BRIEF

---

Allan Fishburn
State Bar Number 07049110
1910 Pacific Avenue
Suite 18800
Dallas, Texas 75201
(214) 761-9170
allanfishburn@yahoo.com

# IDENTITY OF THE COURT, PARTIES AND COUNSEL

THE COURT

Honorable Rick Magnis, sitting by assignment
203rd District Court
Dallas County, Texas

PARTIES

LEE ROY CHANEY                                    Appellant

THE STATE OF TEXAS                               State

COUNSEL

Mr. James Grossman
Assistant District Attorney                        Attorney for the State
Frank Crowley Courts Building
133 N. Riverfront Boulevard
Dallas, Texas 75207

Mr. Andrew Novak
Assistant District Attorney                        Attorney for the State
Frank Crowley Courts Building
133 N. Riverfront Boulevard
Dallas, Texas 75207

Mr. Steven Lafuente
2926 Maple Avenue                                  Attorney for the Defendant
Suite 200
Dallas, Texas 75201

Mr. Allan Fishburn
1910 Pacific Avenue                                Attorney for Appellant
Suite 18800
Dallas, Texas 75201

# TABLE OF CONTENTS

IDENTITY OF THE PARTIES                                        2

TABLE OF CONTENTS                                             3

INDEX OF AUTHORITIES                                          5

STATEMENT OF THE CASE                                        7

ISSUES PRESENTED                                            9

STATEMENT OF FACTS                                         10

POINT OF ERROR ONE

THE EVIDENCE IS INSUFFICIENT TO PROVE                       28
APPELLANT KNEW AN INVESTIGATION WAS
IN PROGRESS

SUMMARY OF ARGUMENT                                        28

ARGUMENT                                                  28

POINT OF ERROR TWO

THE EVIDENCE IS INSUFFICIENT TO PROVE                       33
APPELLANT ALTERED, DESTROYED, OR
CONCEALED THE EVIDENCE IN QUESTION

SUMMARY OF ARGUMENT                                        33

ARGUMENT                                                  33

PRAYER                                                    38

CERTIFICATE OF COMPLIANCE                                        39

CERTIFICATE OF SERVICE                                          39

# INDEX OF AUTHORITIES

**CASES**

Brooks v. State, 323 S.W. 3rd 893                               30,34
(Tex. Crim. App. 2010)

Campbell v. State, 426 S.W. 3rd 780                             34
(Tex. Crim. App. 2014)

Clayton v. State, 235 S.W. 3rd 772                              30,34
(Tex. Crim. App. 2007)

Clinton v. State, 354 S.W. 3rd 795                              36
(Tex. Crim App. 2011)

Cordova v. State, 698 S.W. 2d 107                               31,35
(Tex. Crim. App. 1985)

Curry v. State, 30 S.W. 3rd 394                                 36
(Tex. Crim. App. 2000)

David v. State, PD-0307-21                                      37
(Tex. Crim. App. 2022)

Dean v. State, 449 S.W. 3rd 267                                 30,34
(Tex. App. – Tyler 2014)

Hooper v. State, 214 S.W. 3rd 9                                 30,31,34,35
(Tex. Crim. App. 2007)

Jackson v. Virginia, 443 U.S. 307 (1979)                       30,34

Malik v. State, 953 S.W. 2d 234                                 30,31,35
(Tex. Crim. App. 1997)

Pannell v. State, 7 S.W. 3rd 222                     31,32
(Tex. App. – Dallas 1999)

Ransier v. State, 594 S.W. 3rd 1                     37
(Tex. App. – Houston [14th Dist.] 2019)

Spector v. State, 746 S.W. 2d 945                    37
(Tex. App. – Austin 1988)

Stahmann v. State, 602 S.W. 3rd 573                  36,38
(Tex. Crim. App. 2020)

Stewart v. State, 240 S.W. 3rd 872                   29
(Tex. Crim. App. 2007)

Williams v. State, PD-0470-07                        31,32
(Tex. Crim. App. 2008)

Williams v. State, 270 S.W. 3rd 140                  36,37
(Tex. Crim. App. 2008)

Williamson v. State, 589 S.W. 3rd 292               30,34
(Tex. App – Texarkana 2019)

**STATUTES**

Tex. Govt. Code section 311.011                     36

Tex. Penal Code section 6.03(a)                     30

Tex. Penal Code section 6.03(b)                     29

Tex. Penal Code section 37.09                       29,33

Tex. Penal Code section 37.09(a)(1)                 32

## STATEMENT OF THE CASE

Appellant was charged with tampering with physical evidence by an indictment which reads: In the name and by the authority of the State of Texas: The Grand Jury of Dallas County, State of Texas, duly organized at the July Term, A.D., 2021 of the 283rd Judicial District Court for said County, upon its oath do present in and to said Court at said term, that Lee Chany, hereinafter called Defendant, on or about the 14th day of September, 2020, in the County of Dallas, State of Texas, did unlawfully, the and there, knowing that an investigation was in progress and an official proceeding was pending, alter, destroy and conceal a record, document and thing, to-wit: A substance purported to be methamphetamine with the intent to impair its verity, legibility, and availability as evidence in said investigation and official proceeding.

(C.R. p. 18)

A jury was selected and sworn.  (R.R. Vol. 4, p. 1-67, Vol. 5, p. 12)

Appellant pled not guilty to the indictment.  (R.R. Vol. 5, p. 14)

The jury found Appellant guilty of tampering with physical evidence. (R.R. Vol. 6, p. 41)

The Trial Court set sentence at two years confinement. (R.R. Vol. 6, p. 100)

**ISSUES PRESENTED**

1.  The evidence is insufficient to prove Appellant knew an investigation was in progress.


2.  The evidence is insufficient to prove Appellant altered, destroyed, or concealed the evidence in question.

## STATEMENT OF FACTS

Appellant was charged with tampering with physical evidence:

> In the name and by the authority of the State of Texas: The
> Grand Jury of Dallas County, State of Texas, duly organized at
> the July Term, A.D., 2021 of the 283rd Judicial District Court
> for said County, upon its oath do present in and to said Court at
> said term, that Lee Chany, hereinafter called Defendant, on or
> about the 14th day of September, 2020, in the County of
> Dallas, State of Texas, did unlawfully, the and there, knowing
> that an investigation was in progress and an official proceeding
> was pending, alter, destroy and conceal a record, document and
> thing, to-wit: A substance purported to be methamphetamine
> with the intent to impair its verity, legibility, and availability as
> evidence in said investigation and official proceeding.

(C.R. p. 18)

A jury was selected and sworn.  (R.R. Vol. 4, p. 1-67, Vol. 5, p. 12)

Appellant pled not guilty to the indictment.  (R.R. Vol. 5, p. 14)

Appellant also pled not guilty to a second indictment joined for trial which alleged

possession of a controlled substance.  (R.R. Vol. 5, p. 13)

**Officer Corbin Phillips** testified he came into contact with Appellant on September 14, 2020. (R.R. Vol. 5, p. 23)

The car in which Appellant was a passenger had "an expired registration that also belonged to a different vehicle." (R.R. Vol. 5, p. 24)

After pulling the car over Officer Phillips's partner contacted the driver and Officer Phillips handled Appellant. (R.R. Vol. 5, p. 24)

Officer Phillips testified that five to seven seconds elapsed from the time the car was pulled over until he made contact with Appellant. (R.R. Vol. 5, p. 25)

State's exhibit 1 is the recording of the event taken by the patrol car dash camera. It was admitted without objection and published. (R.R. Vol. 5, p. 28)

As they were pulling over the car, Officer Phillips never saw the driver make any gesture toward the passenger side of the car. (R.R. Vol. 5, p. 30)

When Officer Phillips first saw Appellant, he was holding a "large white styrofoam

11

cup." (R.R. Vol. 5, p. 31)

There was also a cup in the other cup holder. (R.R. Vol. 5, p. 32)

As Phillips and Appellant were talking Appellant put his cup in the empty cup holder. (R.R. Vol. 5, p. 33)

Officer Phillips's partner got consent to search the car from the driver, so Officer Phillips detained Appellant at the front of the squad car. (R.R. Vol. 5, p. 33)

A search of the car yielded the styrofoam cup which contained liquid, a baggie of meth, meth in the liquid and a glass pipe. (R.R. Vol. 5, p. 34)

Officer Phillips testified he has never known anyone to drink methamphetamine. (R.R. Vol. 5, p. 36)

Officer Phillips testified that methamphetamine is "not consumable when put into liquid." "It has to have heat to get the high." (R.R. Vol. 5, p. 37)

State's exhibit 2 is a recording taken by a body came worn camera. It was admitted without objection. (R.R. Vol. 5, p. 39)

Appellant was arrested. Officer Phillips admonished him pursuant to article 38.22. Appellant understood the admonitions. He waived his rights and agreed to respond to questions. (R.R. Vol. 5, p. 43)

Appellant explained that the substance in the cup was his pain medication and that the glass pipe was an incense burner. (R.R. Vol. 5, p. 44)

**Officer Zachary Beauchamp** came into contact with Appellant on September 14, 2020. (R.R. Vol. 5, p. 84)

Officer Beauchamp observed a car at the intersection West Main and West Beltline in Lancaster. He conducted a license plate check. The registration was expired. (R.R. Vol. 5, p. 85)

Officer Beauchamp pulled the car over. A woman was driving. She had a suspended driver's license. (R.R. Vol. 5, p. 88)

The driver was not given a ticket. Officer Beauchamp did decide to impound the car. (R.R. Vol. 5, p 89)

Officer Beauchamp got consent to search the car from the driver. When he opened the cup in the passenger side cup holder he saw "a red liquid inside and then there was a plastic baggie that contained a crystal substance…and a glass pipe." (R.R. Vol. 5, p. 90-91)

Officer Beauchamp testified he has never known methamphetamine to be ingested with soda pop. (R.R. Vol. 5, p. 95)

Officer Beauchamp testified that putting methamphetamine into soda pop would be to "destroy it or hide it." (R.R. Vol. 5, p. 96)

Officer Beachamp weighed the cup and its contents. It added up to 576 grams. (R.R. Vol. 5, p. 104)

Officer's Beauchamp's body cam recording of the event was admitted without objection as State's exhibit 6. (R.R. Vol. 5, p. 108)

14

Officer Beauchamp was asked how much methamphetamine could fit into the baggie in question. He answered: "I've seen…it's hard to say, but you can say that…If I had to guess, ten grams or less." (R.R. Vol. 5, p. 113)

Officer Beauchamp testified that the baggie floating in the cup could have held more than four grams of methamphetamine. (R.R. Vol. 5, p. 114)

Officer Beauchamp was asked what the "floating crystals in that substance were." He answered, "methamphetamine." (R.R. Vol. 5, p. 115)

On cross-examination Officer Beauchamp admitted he did not see who put the methamphetamine and the pipe in the cup. (R.R. Vol. 5, p. 125)

There was methamphetamine found inside the baggie. (R.R. Vol. 5, p. 128)

Officer Beauchamp testified that methamphetamine can be consumed as a liquid. (R.R. Vol. 5, p. 141)

**Richard Garcia** works at the crime lab.  (R.R. Vol. 5, p. 148)

Garcia described how he analyzed the liquid:

> So, I did a preliminary testing on the liquid itself and then after I have a…I'll tab like a test tube, so I pipetted some liquid into a test tube to be put in a performed confirmatory testing on it.

(R.R. Vol 5, p. 164

Garcia described the "confirmatory" test:

> I used the thing called the gas chromatograph mass spectrometer, and they refer to it as a GCMS. I can briefly explain how that works.
>
> The gas chromatograph is a separation technique. When a sample is introduced into this column…you can think of it kind of like a race. If all of the runners in the beginning of the race start at the same time, they may all finish at different times based on how fast or slow they are.
>
> So, after they are done on the gas chromatograph, the compound enters the mass spectrometer and the mass spectrometer the compound gets bombarded by electrons. This causes the compound to breakdown in fragments. I kind of think of this like a puzzle. If you had a completed puzzle and it fell on the floor into a bunch of puzzle pieces, this frag-mentation pattern allows us to identify what a compound is.

(R.R. Vol. 5, p. 165-166)

The confirmatory test showed the sample contained methamphetamine. (R.R. Vol. 5, p. 166)

Garcia's report was admitted without objection as State's exhibit 14. (R.R. Vol. 5, p. 168)

The liquid weighed 508.28 grams. (R.R. Vol. 5, p. 172)

On cross-examination Garcia testified he did "not determine the purity" of the methamphetamine contained in the liquid. (R.R. Vol. 5, p. 176)

Garcia testified that putting methamphetamine into the liquid did not destroy the methamphetamine. (R.R. Vol. 5, p. 182)

The State rested. (R.R. Vol. 5, p. 192)

Appellant moved for a directed verdict. The following colloquy took place:

> THE COURT: All right. We're outside the presence of the jury. The State has rested. What says the Defense?

17

MR. LAFUENTE: At this time the Defense is going to move for an Instructed Verdict on a couple of reasons. The first one, of course, is the obvious one, is the Fourth Amendment. I anticipate my client is going to attempt to raise the fact to speak. But with Your Honor's consideration, I submit to the Court that at the time of the arrest…mainly the arrest was made in a split second. There's…in my mind there's no way that he could tell exactly what it was that he was looking at. He didn't testify that he had any prior contacts with my client. That's not on this record right now. And we don't have the testimony of the female that was on the scene. She didn't bother to come down here and testify as to anything she may or may not have told the officer.

So in my way of thinking my officer didn't have probable cause to arrest my client at the time that he chose to arrest him and, therefore, we move the Court to suppress the evidence against him.

The other issue…and this is probably the more nuanced issue, the more pretty important issue in my mind, Your Honor, because I was reading the case of Seals v. State. And for the record that is 187 S.W.3d, 417 Texas Court of Criminal Appeals 2005. In that case the Court of Appeals is dealing with the issue of adulterants and dilutants specifically the change in the law. Because before Seals, we labored under the Cawthon case and that case is back in the old days under Cawthon. The State had to prove that the substance was introduced with the intent to increase the bulk or quantity of quantity of the controlled substance. That's what an adulterant or dilutant had to be and the legislature changed that definition, I think, in '94. I'm not sure exactly what year that they did, but they changed it. And in Seal the Court considered that issue and they found that, well, a literal reading of the statute they got rid of the intent to increase language and added any material that increases. So in that case they basically found that on that record, okay, that there was no issue, there's no requirement

18

that the State prove the intent to increase. However, and I want to read this into the record and specifically according to Judge Womack's concurring opinion because it's most telling. It says …I'm sorry. The wrong spot.

THE COURT: Can you send a copy of that to the State and the clerk?

MR. LAFUENTE: The…

THE COURT: This case.

MR. LAFUENTE: The Seals case? Yes, sir. I will absolutely do that.

Well, the most important issue, Your Honor, what Judge Womack is taking issue with is…and I'm just going to paraphrase it rather than read it. Judge Womack is saying, look. They are all sharing the same opinion that when we get into the situation where you take a situation like what we have before this court where you're introducing a small amount of methamphetamines that can just be exploded into a first-degree felony with a minimum ten-year sentence, right, it becomes questions of fundamental fairness under the due process clause. And on this record they didn't find that there was a constitutional issue, but that's because nobody made a constitutional issue out of it which is what I'm trying to do here.

On this record, Your Honor, before this court we have a couple of due process problems. Number one, we have this issue of whether, as applied to my client according to the subject to do with due process is this a fundamental fair interpretation of the law to hold him accountable for over 400 grams of methamphetamines in a liquid that's all Big Red and we have no idea how my minute the methamphetamines in the the baggie was. That's one issue. But when you compound that

with the other problems that we have is the way that this prosecution is being unfolded.

Here we have a situation where the State gets to double dip. We get to argue on the one hand that you exploded your range of punishment by adding…or dumping a small amount of methamphetamines into this big liquid of Big Red only if the jury doesn't believe that. But at the same time, okay, fine, you destroyed it. Those are counter-building concepts, Judge, and I would ask the Court to instruct the jury to find him not guilty for those reasons.

MR. GROSSMAN: Would Your Honor like a response from the State?

THE COURT: I would.

MR. GROSSMAN: Okay. So seeing how nothing has been filed and we've given no notice as to this argument before especially in terms of the unconstitutional analysis for an argument for…I'm assuming it is to drop the charges or to dismiss this case.

MR. LAFUENTE: (Nods head).

MR. GROSSMAN: Okay. I first would like to take into effect of what we, the State, are required to prove and that's possession on or about a certain day that the defendant knowingly possessed care, custody and control of a controlled substance of methamphetamine in an amount greater than 400 grams.

On the flip side, and I believe this is what the argument was from Defense was, that at the same exact time you can't just add something and also call it a tamper. Right? You can't destroy it. Well, the law on tamper isn't just destruction, Your Honor, it's alter or conceal a document, record, or thing.

20

Methamphetamine, which we have proven and to this Court, is typically a crystalline-like material. It can be liquid. It can. But typically, and what the officer saw was its originated state of solid, of crystalline-like material. How convenient is it to try to hide that crystal in a material that could dissolve it so an officer could not see it. Take away the fact that if there was no baggie, that there was no pipe and it was just a solid crystalline substance dissolving, an officer at that point would have no way of knowing that that rock which is now turning into a whole other substance being concealed, or being altered, is in fact an illegal controlled substance.

THE COURT: Here's the concern I have. An adulterant or dilutant means any material that increases the bulk or quantity of a controlled substance. We all agree that's straight out of the statute.

MR. GROSSMAN: That's correct.

THE COURT: But then you're saying he committed another separate act. The same act that he committed did increase the bulk…the same act, putting it in a liquid…also served to decrease, or hide, or destroy the bulk.

MR. GROSSMAN: That is correct, Your Honor.

THE COURT: And I think that, that's fundamentally unfair.

MR. GROSSMAN: Yet the law allows it, Your Honor.

THE COURT: Pardon?

MR. GROSSMAN: Yet -- duly noted, and respectfully duly noted, Your Honor. Yet, for whatever reason…

THE COURT: The same act that increases the punishment range also creates a separate offense of destroying the property.

21

MR. NOVAK: And that's why we intend to include the lesser includers all the way down to under a gram in the jury charge. Because we believe we've proven the top charge and we're going to include all the rest of the lesser includers because we think there's evidence all the way down.

THE COURT: And that that was what I was going to ask you to do.

MR. GROSSMAN: Yes, Your Honor. And just for the record and for the Defense purposes, part of the reason why we asked about can you hide this amount of drugs in this bag is so that we needed to produce some sort of evidence, any evidence, that there could be a lesser included amount. And it's, in all fairness to be able to answer the call of fairness to the Judge, we are including all of the lesser includers.

THE COURT: All in fairness to the judge would be that I instruct you add four grams or not anything greater than four grams.

MR. NOVAK: We're in a situation because the defendant put us in this situation by dumping the amount into…

THE COURT: Right. But you charge him one or you charge him the other, but the same act…you're trying to say that an act that increases his culpability is also an act that is suppose to hide, and that's why we have the separate offense.

MR. GROSSMAN: You're right, Your Honor. However, if the legislature who wrote all of this out thought in the same, they would have barred it, there would have been an exception. And I understand it. I totally understand it. And that is maybe for the Court, but that is not the greatest answer in the world that appeases the Court's conscious. But that is the truth and that is what we have at this moment.

THE COURT: Right.

MR. GROSSMAN: For the constitutional analysis or the constitutional argument at this rate nothing codified within the State's powers states that we can't do that.

THE COURT: I'm going to give the State two choices here because I really want this to be fair for both sides. You can dismiss the tampering and go with full amount, including the lesser includers, or we can clear the tampering. But then I'm taking it down…I'm instructing not anything more than four grams.

MR. NOVAK: I think that's fair, Judge, to do both charges, but instructing not anything more than four grams.

THE COURT: Pardon?

MR. GROSSMAN: If you will allow us to remain with the four grams…four to 200 and anything less and instruct out anything higher, I think that's fair.

THE COURT: Yes. Okay. So you want to keep the tampering.

MR. GROSSMAN: Keep the tampering along with the possession of four to 200 and less.

THE COURT: Okay. And then do you want to talk to your client again about whether he wishes to testify.

MR. LAFUENTE: Yes, sir, I do, Your Honor. For the record, I want to be clear because I don't want to leave anything to chance given the gravamen and the severity of the offense. Now, at less than four grams where are we?

THE COURT: Two to four grams is a third degree enhanced to a second degree. One to four grams is a state jail and there's no

23

enhancement because you don't have an aggravated conviction.

MR. GROSSMAN: He did five to life.

MR. LAFUENTE: Less than a gram is state jail. One to four is….

THE COURT: A third degree enhanced to a second degree if they believe the paragraph is true.

MR. LAFUENTE: So it's two to twenty.

THE COURT: Two to twenty. That's correct.

MR. NOVAK: Possession of over four grams is two to 20 and there will be an enhancement later.

MR. GROSSMAN: But we're talking right now just because it's technically it's a third versus a second degree.

THE COURT: Correct.

MR. LAFUENTE: With the enhancement.

MR. NOVAK: No.

MR. LAFUENTE: I'm so confused.

MR. GROSSMAN: Later it could become a five to life.

THE COURT: They're not dismissing the tampering.

MR. LAFUENTE: Right. I understand that.

THE COURT: I'm not instructing anything more than four grams.

24

MR. LAFUENTE: Right.

THE COURT: So they're going to be charged on either a state jail felony and a third-degree felony.

MR. LAFUENTE: Right.

THE COURT: And they're going to have a choice of those two or a not guilty. So if it's a state jail felony there's no enhancement because then they need two…

MR. NOVAK: Because he did say anything up to ten grams in that little bag. He did testify it could be anything up to ten grams or less. So we do have it as four to 200.

MR. GROSSMAN: That's what my understanding was. My understanding was it would be at least a second. The highest it could possibly be would be a second degree possession of four to 200.

THE COURT: Yeah, he's right. It did say ten grams. So I'm striking out anything more than 200 grams. So it's going to be…they are going to be charged on either less than a gram, one to four grams, or four to 200 grams. If they get the four to that's a second degree enhanced to a first-degree with a paragraph. Correct?

MR. GROSSMAN: Correct.

MR. LAFUENTE: But that's still going to be five to 99. It wouldn't be a minimum of ten.

MR. GROSSMAN: Correct.

THE COURT: It would be five to 99 if they prove the paragraph.

25

MR. GROSSMAN: Correct. And if I may add just for the record because it was indicted as greater than 400 grams there also has to be a mandatory fine assessed. That's part of the code. If it's less than 400 grams there's no mandatory fine. I just wanted to add that for the record.

(R.R. Vol. 5, p. 192-203)

Appellant requested an instruction on "38.23." He argued that his cross-examination raised a fact issue as to whether there was probable cause to arrest Appellant. (R.R. Vol. 6, p. 5-8)

The request was denied. (R.R. Vol. 6, p. 8)

Appellant rested and both sides closed. (R.R. Vol. 6, p. 9)

The jury found Appellant guilty of tampering with physical evidence. (R.R. Vol. 6, p. 41)

Appellant pled true to the existence of a prior felony conviction. (R.R. Vol. 6, p. 46)

**Eddie Lopez** is an investigator.  (R.R. Vol. 6, p. 47)

Mr. Lopez photographed Appellant's tattoos.  (R.R. Vol. 6, p. 50)

Mr. Lopez testified Appellant had some Tango Blast tattoos.  (R.R. Vol. 6, p. 56)

State's exhibit 36 and 37, which show Appellant's federal conviction, were admitted without objection.  (R.R. Vol. 6, p. 62-63)

The State rested.  (R.R. Vol. 6, p. 63)

**Appellant** testified he successfully completed drug programs in prison.  (R.R. Vol. 6, p. 67)

Appellant testified he has never been in a gang.  (R.R. Vol. 6, p. 69)

Appellant rested. The State rested and both sides closed.  (R.R. Vol. 6, p. 94)

The Trial Court set sentence at two years confinement.  (R.R. Vol. 6, p. 100)

**POINT OF ERROR ONE**

**THE EVIDENCE IS INSUFFICIENT TO PROVE APPELLANT**

**KNEW AN INVESTIGATION WAS IN PROGRESS**

**SUMMARY OF ARGUMENT**

Appellant was a passenger in a car pulled over for a traffic violation. There is no evidence that Appellant knew there was a drug investigation going on when he put his methamphetamine and pipe in his cup of Big Red.

**ARGUMENT**

Appellant was charged with tampering with physical evidence by an indictment which reads:

> In the name and by the authority of the State of Texas: The Grand Jury of Dallas County, State of Texas, duly organized at the July Term, A.D., 2021 of the 283rd Judicial District Court for said County, upon its oath do present in and to said Court at said term, that Lee Chany, hereinafter called Defendant, on or about the 14th day of September, 2020, in the County of Dallas, State of Texas, did unlawfully, the and there, knowing that an investigation was in progress and an official proceeding

28

was pending, alter, destroy and conceal a record, document and thing, to-wit: A substance purported to be methamphetamine with the intent to impair its verity, legibility, and availability as evidence in said investigation and official proceeding.

Tampering is proscribed by Tex. Penal Code section 37.09 which reads in relevant part:

(a) A person commits an offense if, knowing that an investigation…is…in progress, he;

(1) alters, destroys, or conceals…any thing with intent to impair its verity…or availability as evidence in the investigation….

Thus, there are three elements the State must prove:

(1) knowing that an investigation is in progress;

(2) the actor alters, destroys or conceals the tangible;

(3) with the intent to impair its availability.

These three elements include two different culpable mental states-knowledge and intent. Stewart v. State, 240 S.W. 3rd 872, 874 (Tex. Crim. App. 2007). The statute requires the knowledge of an investigation and the intent to impair the thing's availability as evidence.

"A person acts knowingly, or with knowledge, with respect…to circumstances surrounding his conduct when he is aware …that the circumstances exist." Tex. Penal Code section 6.03(b). "A person acts intentionally, or with intent with

29

respect…to a result of his conduct when it is his conscious objective or desire to…cause the result." Tex. Penal Code section 6.03(a).

In assessing the legal sufficiency of the evidence, the reviewing court considers all of the evidence in the light most favorable to the verdict to determine whether a rational tier of fact could have found the essential elements of the offense beyond a reasonable doubt." Dean v. State, 449 S.W. 3rd 267, 268 (Tex. App. – Tyler 2014); See, Williamson v. State, 589 S.W. 3rd 292, 297 (Tex. App – Texarkana 2019) (citing Brooks v. State, 323 S.W. 3rd 893, 912 (Tex. Crim. App. 2010) (plurality op.); Jackson v. Virginia, 443 U.S. 307, 319 (1979). "Our rigorous [legal sufficiency] review focuses on the quality of the evidence presented." Williamson, 589 S.W. 3rd at 297 (citing Brooks, 323 S.W. 3rd at 917-918 (Cochran, J. concurring)). "We examine legal sufficiency under the direction of the Brooks opinion, while giving deference to the responsibility to the jury to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. (quoting Hooper v. State, 214 S.W. 3rd 9, 13 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 318 – 319; Clayton v. State, 235 S.W. 3rd 772, 778 (Tex. Crim. App. 2007).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." Id. at 298 (quoting Malik v. State,

953 S.W. 2d 234, 240 (Tex. Crim. App. 1997). "The hypothetically correct jury charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." Id. (quoting Malik, 953 S.W. 2d at 240).

"In our review, we consider events occurring before, during, and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act. Id. at 297 (quoting Hooper, 214 S.W. 3rd at 13 (quoting Cordova v. State, 698 S.W. 2d 107, 111 (Tex. Crim. App. 1985)). "It is not required that each fact point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." Id. (quoting Hooper, 214 S.W. 3rd at 13).

Appellant challenges the sufficiency of the evidence establishing his knowledge that the contraband in his Big Red cup was evidence in the criminal investigation that was in progress related to possession of a controlled substance or paraphernalia. See, Williams v. State, PD-0470-07 (Tex. Crim. App. 2008); Pannell v. State, 7 S.W. 3rd 222 (Tex. App. – Dallas 1999). In Pannell, this Court acquitted Mr. Pannell who threw marijuana out of a car window during a traffic investigation

concluding that section 37.09(a)(1) required the defendant to "be aware that the thing he altered, destroyed, or concealed was evidence in the investigation as it existed at the time of the altercation, destruction, or concealment." Id., at 223. This Court reasoned there was no investigation, pending, or in progress, in which the marijuana could have served as evidence. Id., at 244.

In the present case the State proved the existence of a traffic investigation. Both officers testified that they were not conducting a drug investigation at the time of the event. Both denied placing the driver and Appellant under surveillance prior to the traffic stop. Both officers testified the car was pulled over for objective reason of a traffic violation and that no subjective reason was involved.

As pointed out in Williams, "the cases following Pannell have similarly analyzed events leading up to alteration, destruction, or concealment of evidence in order to classify the investigation. This effort makes sense when the indictment does not specifically allege the type of investigation in progress." Id.. The indictment in the present case is likewise unspecific. Moreover, the State failed to prove an investigation was taking place beyond a traffic violation.

Because there is no evidence that Appellant knew he was personally being investigated at the time he put the contraband in the cup, the evidence fails on the element of knowledge.

**POINT OF ERROR TWO**

**THE EVIDENCE IS INSUFFICIENT TO PROVE APPELLANT ALTERED, DESTROYED, OR CONCEALED THE EVIDENCE IN QUESTION**

**SUMMARY OF ARGUMENT**

The chemist testified the methamphetamine wasn't destroyed. The methamphetamine wasn't altered by immersion, and the methamphetamine was visible in the cup of Big Red and thus not concealed.

**ARGUMENT**

Appellant was charged by indictment with tampering with physical evidence. Tex. Penal Code section 37.09. He pled not guilty. The case was tried to a jury at guilt/innocence. Appellant argues that the evidence is insufficient to prove any of the three manners and means alleged in the indictment.

The indictment in the present case alleged Appellant altered, destroyed, or

33

concealed the evidence. The jury charge authorized conviction on all three theories of liability. When such is the case, a conviction can be sustained upon proof of any of the three theories. Campbell v. State, 426 S.W. 3rd 780, 786 (Tex. Crim. App. 2014).

In assessing the legal sufficiency of the evidence, the reviewing court considers all of the evidence in the light most favorable to the verdict to determine whether a rational tier of fact could have found the essential elements of the offense beyond a reasonable doubt." Dean v. State, 449 S.W. 3rd 267, 268 (Tex. App. – Tyler 2014); See, Williamson v. State, 589 S.W. 3rd 292, 297 (Tex. App – Texarkana 2019) (citing Brooks v. State, 323 S.W. 3rd 893, 912 (Tex. Crim. App. 2010) (plurality op.); Jackson v. Virginia, 443 U.S. 307, 319 (1979). "Our rigorous [legal sufficiency] review focuses on the quality of the evidence presented." Williamson, 589 S.W. 3rd at 297 (citing Brooks, 323 S.W. 3rd at 917-918 (Cochran, J. concurring)). "We examine legal sufficiency under the direction of the Brooks opinion, while giving deference to the responsibility to the jury to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." Id. (quoting Hooper v. State, 214 S.W. 3rd 9, 13 (Tex. Crim. App. 2007) (citing Jackson, 443 U.S. at 318 – 319; Clayton v. State, 235 S.W. 3rd 772, 778 (Tex. Crim. App. 2007).

"Legal sufficiency of the evidence is measured by the elements of the offense as defined by a hypothetically correct jury charge." Id. at 298 (quoting Malik v. State, 953 S.W. 2d 234, 240 (Tex. Crim. App. 1997). "The hypothetically correct jury charge is one that accurately sets out the law, is authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." Id. (quoting Malik, 953 S.W. 2d at 240).

"In our review, we consider events occurring before, during, and after the commission of the offense and may rely on actions of the defendant which show an understanding and common design to do the prohibited act. Id. at 297 (quoting Hooper, 214 S.W. 3rd at 13 (quoting Cordova v. State, 698 S.W. 2d 107, 111 (Tex. Crim. App. 1985)). "It is not required that each fact point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction." Id. (quoting Hooper, 214 S.W. 3rd at 13).

To determine whether the evidence is sufficient the evidence adduced at trial is compared to "the essential elements of the offense as defined by the hypothetically correct jury." Malik v. State, 933 S.W. 2d 234, 240 (Tex. Crim. App. 1997). The hypothetically correct jury charge is one that "accurately sets out the law, is

authorized by the indictment, does not unnecessarily increase the State's burden of proof or unnecessarily restrict the State's theories of liability, and adequately describes the particular offense for which the defendant was tried." Id. The "law as authorized by the indictment includes the statutory elements of the offense and those elements as modified by the indictment Curry v. State, 30 S.W. 3rd 394, 404 (Tex. Crim. App. 2000).

In the present case the jury charge is erroneous. It contains a "Definitions" section that purports to define terms not defined by statute. These terms are alter, destroy, conceal, and verity. The correct charge would have contained no definitions of these terms.

None of these terms- "alters, destroys, or conceals"- is defined in the statute. When not particularly defined by statute, words are to be given the meaning found in their "common usage." Tex. Govt. Code section 311.011. "Jurors may freely read statutory language to have any meaning which is acceptable in common parlance." Clinton v. State, 354 S.W. 3rd 795, 800 (Tex. Crim App. 2011).

**Alter** "means that the defendant changed or modified the thing itself." Stahmann v. State, 603 S.W. 3rd 573, 579 (Tex. Crim. App. 2020). The word can mean "to change; make different; modify." Williams v. State, 270 S.W. 3rd 140, 146 (Tex. Crim. App. 2008). Or, alter can mean "to make different without changing into

36

something else" and "to make different in some particular, as size, style, course, or the like, modify." <u>Ransier v. State</u>, 594 S.W. 3rd 1, 12 (Tex. App. – Houston [14th Dist.] 2019). "The common thread among the definitions is that alter has an expansive meaning in common usage." <u>David v. State</u>, PD-0307-21 (Tex. Crim. App. 2022).

In the present case there is no evidence that putting the methamphetamine in the Big Red altered it. The methamphetamine could have been snorted, smoked, injected or drunk to the same, or similar intoxicating effect. If the hypothetical meth addict were handed an ice-cold Big red and told there was nearly a gram of meth dissolved in it, she would have happily drunk it. Obviously, the drug was not altered by immersion in liquid.

**Destroy** means the thing "has been ruined or rendered useless." <u>Williams v. State</u>, 270 S.W. 3rd 140, 146 (Tex. Crim. App. 2008). A thing is destroyed when it has lost its identity and is no longer useful. <u>Spector v. State</u>, 746 S.W. 2d 945, 945-946 (Tex. App. – Austin 1988). The evidence in the present case showed the meth wasn't altered, an therefore not destroyed. Moreover, witness Beauchamp testified crystals were observed on or in the liquid. And, Chemist Garcia testified that putting the methamphetamine in the liquid did not destroy it.

**Conceal** "requires a showing that the allegedly concealed item was hidden,

removed from sight or notice, or kept from discovery or observation." <u>Stahmann v. State</u>, 603 S.W. 3rd 573, 581 (Tex. Crim. App. 2020). In <u>Stahmann</u>, Mr. Stahmann wrecked his car. As officers stopped to render aid Stahmann threw something over a game fence which landed on top of the grass two or three feet away. It was a bottle of prescription medicine. The Court of Criminal Appeals held the evidence was insufficient to prove Stahmann had tampered with evidence by concealing it. The Court stated: "While a rational jury could have reasonably inferred that Stahmann intended to conceal the pill bottle when he threw it over the wire fence, the evidence shows he failed to conceal it as he intended because the bottle landed short of the bush in plain view on top of some grass. In the present case the evidence shows Appellant intended to conceal the methamphetamine, but he failed to do so because it was still floating in his Big Red when observed as the result Officer Beauchamp's warrantless unobjected to search. The evidence is insufficient to prove tampering by concealment.

**PRAYER**

WHEREFORE Premises Considered, Appellant prays that this Honorable Court reverse and acquit or remand this cause to the Trial Court for further proceedings.

Respectfully submitted:

/s/ Allan Fishburn
Allan Fishburn
State Bar Number: 07049110
1910 Pacific Avenue, Suite 18800
Dallas, Texas 75201
Telephone (214) 761-9170
allanfishburn@yahoo.com

## CERTIFICATE OF COMPLIANCE

I hereby certify the foregoing document contains 6,773 words.

/s/ AllanFishburn
Allan Fishburn

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing Brief was e-served to

dcdaappeals@dallascounty.org on this the 17th day of August 2022.

/s/ AllanFishburn
Allan Fishburn

**Automated Certificate of eService**

This automated certificate of service was created by the efiling system. The filer served this document via email generated by the efiling system on the date and to the persons listed below. The rules governing certificates of service have not changed. Filers must still provide a certificate of service that complies with all applicable rules.

Debbie Brock on behalf of Allan Fishburn
Bar No. 07049110
lawoffice1910@yahoo.com
Envelope ID: 67367386
Status as of 8/17/2022 8:46 AM CST

Case Contacts

| Name | BarNumber | Email | TimestampSubmitted | Status |
|---|---|---|---|---|
| Dallas Appeals | | dcdaappeals@dallascounty.org | 8/17/2022 6:53:36 AM | SENT |